UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS

IOWA PHYSICIANS' CLINIC MEDICAL )
FOUNDATION d/b/a Iowa Health )
Physicians, and RANDALL MULLIN, M.D., )
                Plaintiffs )
                 )
v. )   Case No. 07-4012
                 )
PHYSICIANS' INSURANCE COMPANY )
OF WISCONSIN, )
                Defendant )

## OPINION AND ORDER

The parties have consented to have this case heard to judgment by a United States Magistrate Judge pursuant to 28 U.S.C. § 636(c), and the District Judge has referred the case to me. Now before the Court are the Plaintiffs' Motion to Voluntarily Dismiss Count III (#19) and the Defendant's Motion for Judgment on the Pleadings (#16). For the following reasons, the Motion to Dismiss Count III (#19) is granted and the Motion for Judgment on the Pleadings is granted in part and denied in part.

## JURISDICTION

This case was filed in the Circuit Court of Henry County, Illinois, and was removed to this Court. Plaintiff Randall Mullin is domiciled in the State of Illinois. Plaintiff Iowa Physicians Clinic is a not-for-profit corporation organized under the laws of Iowa with its principle place of business in Iowa.[1] Defendant Physicians Insurance Company of Wisconsin is an insurance company, incorporated pursuant to the laws of Wisconsin and with its principle place of business in Wisconsin. The amount in controversy exceeds

---

[1]See Supplement to Notice of Removal (Doc. #21).

$75,000.00. This Court therefore has subject matter jurisdiction pursuant to 28 U.S.C. 1332.

**THE PLEADINGS**

Defendant Iowa Physicians Clinic Medical Foundation does business as Iowa Health Physicians (hereafter "IHP"), operating medical clinics in Iowa and Illinois. One of those clinics is located in Geneseo, Illinois. Dr. Randall Mullin is an employee of IHP at the Geneseo Clinic. As part of his employment package, IPH provided Dr. Mullin claims-made professional liability insurance coverage up to $1 million under a Policy issued by Physicians Insurance Company of Wisconsin ("PIC").

The Policy defines two different types of Coverage: Coverage A and Coverage B. Coverage A provides "Policyholder Coverage" whereby PIC agreed to pay "on the policyholder's behalf damages that the policyholder is legally obligated to pay because of any professional health care incident" falling within the coverage period that arose out of "professional health care services provided by the policyholder or by any person for whom the policyholder is legally responsible."

Coverage B provides "Certificate Holder Coverage" whereby PIC agreed to pay on a certificate holder's behalf damages that the certificate holder is "legally obligated to pay because of any health care incident" during the policy period arising out of professional health care services provided by the policyholder or by any person for whom the policyholder is legally responsible."

The Policy goes on to state that Coverage A applies "only if Coverage A is shown in the Coverage Summary" and that Coverage B applies "only if Coverage B is shown in the Coverage Summary and certificate." Moreover, under the Policy, a certificate holder with

coverage under Coverage B cannot be covered under Coverage A, and a certificate holder with coverage under Coverage A cannot have coverage under Coverage B.

The Policy includes a document entitled "Coverage Summary for Entity Professional Liability Policy" which identifies IHP as the "Policyholder." The Summary shows "$0" in "Coverage Limits" for "Professional Liability", for "Coverage B-Certificate Holder Coverage", and for "Legal Expense Coverage". The Summary does not refer to Coverage A at all.

Among the endorsements to the Coverage Summary is a "Certificate Schedule for Entity Policy." The Certificate Schedule states that certificates of insurance were issued to individual physicians, each of whom was denominated a "Certificate Holder." The list of Certificate Holders includes Dr. Mullin. The coverage shown on this Certificate is Coverage B, with a per incident coverage limit of $1,000,000.

The following pertinent terms are defined in the policy.

> **Policyholder --** means a group, entity, corporation, partnership or other association organized and operating to provide professional health care services and that is shown as Policyholder in the Coverage Summary. A policyholder does not necessarily have coverage under this policy; the policyholder has coverage under the policy only if Coverage A is shown on the Coverage Summary.

A "Certificate Holder" is defined in the Policy as:

> **Certificate Holder(s)** --: means each organization or individual issued a certificate and named on the certificate schedule, as long as that organization or individual is affiliated with the policyholder for the purpose of providing professional health care services. An individual is affiliated with the policyholder if the individual is employed by or under contract with the policyholder. An organization is affiliated with the policyholder if the organization is controlled by the policyholder. Certificate holders have coverage under this policy only when Coverage B is shown on the Coverage Summary and certificate.

The Policy defines Certificate as follows:

> **Certificate** – means the Certificate of Coverage issued to each certificate holder under this policy and provides a listing of the essential features of policy coverage. The policy itself governs the terms of this insurance and must be consulted for a full description of coverage.

3

Separate and distinct from the PIC Policy, IHP maintained self insurance and commercial insurance for claims brought against it.

A medical malpractice suit was brought by Laura Goetz against Dr. Mullin. IHP was also a named defendant, based on vicarious liability. Under Dr. Mullin's policy, PIC had a duty to defend Dr. Mullin, and it did so, retaining Jennifer Rinden to represent Dr. Mullin in the Goetz litigation. IPH retained separate counsel, John Telleen.

Based on information gleaned during discovery, it became apparent that Dr. Mullin - and therefore IHP - would not escape liability, and further that any verdict would quite likely exceed Dr. Mullin's coverage under the PIC policy. Dr. Mullin therefore gave PIC authority to settle the case. In the months leading up to the trial, various settlement demands were made by Goetz's counsel, at least one of which was within the $1 million policy limit. In addition, there was a mediation. At no time did PIC make any offer that exceeded $200,000, despite repeated urging by Ms. Rinden to settle within the policy limits. Given plaintiff's evaluation that the case was worth at least $900,000, no settlement was reached. The case was tried, and the jury returned a verdict of $3,501,000 jointly against Dr. Mullin and IHP. After trial, PIC paid its $1 million policy limit plus its share of the post-verdict interest; IHP paid the rest: $2,596,901. Dr. Mullin paid none of the judgment amount.

Dr. Mullin and IHP explored the possibility of assignment of Dr. Mullin's claim to IHP, which would then prosecute a civil lawsuit. The Policy appears to prohibit any assignment without PIC's consent, and PIC refused to give its consent to any such assignment.

This lawsuit was then filed by both Dr. Mullin and IHP against PIC in state court. PIC removed the case to this Court on diversity grounds. In Count I, IHP alleges bad faith failure to settle within policy limits, seeking the damages it paid on the verdict and defense

costs incurred after the refusal to settle.  Count II is Dr. Mullins' claim for bad faith, seeking damages for the increase in his malpractice insurance premiums, mental distress, and injury to his reputation.  In Count III, both Plaintiffs seek a declaration that the Policy's anti-assignment provision is unenforceable as against public policy.

Defendant filed its answer and then moved for judgment on the pleadings.  In that motion, PIC argues that it owed no duty to an entity such as IHP which is not a named insured under the Policy, and also that Dr. Mullin has no claim because he paid none of the verdict and therefore suffered no financial loss.

Plaintiffs have also moved to dismiss Count III without prejudice, stating that because they have agreed to abandon assignment and to pursue individually their claims against PIC, Count III is "moot."  PIC opposes this motion, asserting that in order for the claim to be truly moot, any such dismissal must be with prejudice, coming as it does on the heels of the motion for judgment on the pleadings.

## DISCUSSION

### DISMISSAL OF COUNT III

In Count III, the Plaintiff's asked the Court to construe the anti-assignment provision of the insurance policy at issue and declare that it violates public policy.  Plaintiffs now claim that this Count is moot because they are each pursuing their own claims instead of seeking assignment.  The only issue is whether the dismissal should be without prejudice, as Plaintiffs ask in their motion to dismiss this Count, or whether it should be with prejudice, as Defendant asserts in its opposition to the motion.

Fed.R.Civ.P. 41(a)(1) authorizes a plaintiff to dismiss an action without order of court by filing a notice of dismissal before the adverse party files one of two responsive

5

pleadings: an answer or a motion for summary judgment. Fed.R.Civ.P. 41(a)(2) provides that an action shall not be dismissed on plaintiff's motion after the filing of an answer or summary judgment motion, except on such terms and conditions as the court deems proper. Both of these sections state that, unless otherwise stated in the notice of dismissal or the Court's order, the dismissal is without prejudice.

In this case, neither an answer nor a motion for summary judgment has been filed. Plaintiffs would have been entitled to dismissal without prejudice had they simply filed a Notice of Dismissal. Instead they filed the pending Motion to Dismiss. Does that technical error deprive them of their ability to dismiss without prejudice? No authority cited by defendants holds that it does. Nor does any authority cited by defendants limit in any way a plaintiff's otherwise-unlimited right to dismiss a claim prior to filing of the enumerated pleadings.

Defendants arguments for dismissal with prejudice are based on the second section of Rule 41: namely a motion to dismiss that requires court approval. All of these arguments go to hypothetical future effects of a dismissal without prejudice. Defendants opine that plaintiffs could execute an assignment after the Court rules on the substantive claims contained in the other counts and then resume or initiate further litigation. Putting to the side for a moment the fact that in this case a motion was not necessary, I find that a hypothetical future situation seems a poor basis for imposing terms and conditions on a voluntary dismissal that is filed this early in the litigation.

The motion to dismiss Count III without prejudice is therefore allowed, and Count III is dismissed without prejudice.

**JUDGMENT ON THE PLEADINGS - GENERALLY**

In considering a motion for judgment on the pleadings, the court must view the facts presented in the pleadings in the light most favorable to the non-moving party. Forseth v. Village of Sussex, 1999 F.3d 363 (7th Cir. 2000); Alexander v. Chicago, 994 F.2d 333 (7th Cir. 1993); Gillman v. Burlington Northern RR Co., 878 F.2d 1020 (7th Cir. 1989). If the purpose of a motion for judgment on the pleadings is to dispose of a case on the basis of underlying substantive merits[2], "the appropriate standard is that applicable to summary judgment, except that the court may consider only the contents of the pleadings." Alexander, 994 F.2d 336. The moving party must show that there are no genuine issues of material fact to be resolved and that it is entitled to judgment as a matter of law. Id.

**BAD FAITH FAILURE TO SETTLE**

Under Illinois law, an insurer has a duty to its insured to act in good faith in responding to settlement offers. Haddick ex rel. Griffith v. Valor Ins., 763 N.E.2d 299, 303 (Ill. 2001). Breach of this duty by the insurer gives rise to a tort claim for bad faith failure to settle, and it may result in imposition upon the insurer of liability in tort to its insured for the entire judgment against its insured, including any amount in excess of policy limits. Haddick, 763 N.E.2d at 303.

By recognizing this duty, Illinois has created a narrow exception to the general contract rule that the implied covenant of good faith and fair dealing, implicit in every contract, is not an independent source of duties giving rise to an action in tort. Cramer v.

---

[2]Motions for judgment on the pleadings can also be used to raise various Rule 12(b) procedural defenses , in which case the standard applicable to motions to dismiss governs. Alexander, 933 F.2d at 336. In this case, it is clear that Defendant's motion is an effort to dispose of the case on substantive merits, and not raise procedural defenses.

Insurance Exchange Agency, 675 N.E.2d 897, 903 (Ill. 1996).  Creation of this exception acknowledges an insurer's exclusive control over defense of litigation, including settlement negotiations, which may give the insurer an incentive to decline a settlement offer and proceed to trial, an incentive that may be in conflict with the insured's desire to settle within policy limits.  Haddick, 763 N.E.2d at 303.

Because the insurance contract itself (and contract law generally) provides no remedy for a breach of this duty, the law imposes upon the insurer the duty to take into consideration the insured's interests in settling within policy limits. Id.  This duty arises (1) when a claim has been made against the insured; and (2) there is a reasonable probability of recovery in excess of policy limits; and (3) there is a reasonable probability of a finding of liability against the insured; and (4) a third party demands settlement within policy limits[3]. Id. at 305.

Characterizing its position as being based on an issue of first impression in Illinois, IHP asserts that the duty to settle extends in this case not just to the insured, Dr. Mullin, but also to the Policyholder, IHP, who, while not insured under the policy, is a "party" to the insurance contract, has paid for the coverage extended by that policy, and was harmed by the insurer's bad faith refusal to settle.

A federal court applying unresolved issues of state law must predict how the State's courts would resolve the issue, extrapolating from existing statements of state law and turning to other jurisdictions' statement of law to the extent they are not inconsistent.  Zenith

---

[3]The Haddick court also noted that there is an exception to the 4th element: where the probability of an adverse finding on liability is great and the amount of probable damages would greatly exceed policy limits, the duty may impose upon the insurer the obligation to initiate settlement discussions before any demand is made.  763 N.E.2d. at 305.

Ins. Co. v. Employers Ins. of Wisconsin, 141 F.3d 300, 304 (7th Cir. 1998); National Union Ins. Co. v. Dowd & Dowd, 2 F.Supp. 2d 1013, 1020 (N.D.Ill. 1998).

I do not believe that Illinois would extend the duty to settle to benefit IHP under the facts of this case. In Cramer, the case in which the Illinois Supreme Court first affirmed that the tort of bad faith was recognized under Illinois law, the Illinois Supreme Court had this to say about the narrow exception it was creating:

> To allow a bad faith action would transform many breach of contract actions into independent tort actions. A duty of good faith and fair dealing would be tortiously violated whenever one party takes an action designed to deprive the other of the benefits of the agreement. A bad faith action would encourage plaintiffs to sue in tort and not breach of contract, to avoid suit limitation clauses and the cap on the statutory remedy...In summary, an insurer's conduct may give rise to both a breach of contract action and a separate and independent tort action. Mere allegations of bad faith or unreasonable and vexatious conduct, without more, however, do not constitute a tort. Courts therefore should look beyond the legal theory asserted to the conduct forming the basis for the claim. In cases where a plaintiff actually alleges and proves the elements of a separate tort, a plaintiff may bring an independent tort action, such as common law fraud, for insurer misconduct.

675 N.E.2d at 903.

Here there is no argument whether plaintiff is pleading any cognizable separate tort. Plaintiff acknowledges that there is no tort at the present time because Illinois law presently recognizes no duty running from PIC to IHP under the facts in this case. Instead, IHP asks this Court to create such a tort by extending the legal duty to settle to include certain third parties injured by the insurer's bad faith. This I decline to do.

If IHP were the insured, it would have a tort claim. But IHP is not the insured. IHP would have this Court treat it as if it were the insured, because it paid the premiums. But in respect to the insurance contract between IHP and PIC, IHP is no different than any other contracting party in any ordinary, non-insurance contract. If the duty to settle extends to a

non-insured, there is no principled basis for refusing to extend it to other contracting parties in other types of contracts where consideration has been paid.

Similarly, IHP suggests that the harm it incurred is a reason to extend the duty in this case. But the harm to IHP caused by PIC's refusal to settle is no different than the harm resulting in any *respondeat superior* case. If this harm is sufficient to justify extending the duty to settle, then on what grounds can an employee's insurance coverage be denied to an employer? Or an agent's to a principal? Or one tortfeasor's to another's? To extend this narrow duty because of the harm would open the floodgates to other similar extensions, and there is simply nothing in Illinois law to suggest that such an extension has ever been contemplated.

The fact that IHP paid the premiums on behalf of the insured is similarly of no help to IHP's argument. The premiums paid were the consideration IHP paid for the insurance contract between IHP and PIC. Using that fact to justify an extension of the duty to settle would affect the law of third party beneficiary contracts.

There is nothing to suggest that Illinois law would extend the duty to settle to run to IHP. In fact, a number of Illinois courts have specifically declined to extend a primary insurer's duty to settle to excess insurance carriers. See, Haddick v. Valor Ins., 763 N.E.2d 288,299 (Ill. 2002); U.S. Fire Ins. Co. v. Zurich Ins. Co., 768 N.E.2d 288 (Ill.App.2002); Twin City Fire Ins. Co. v. Country Mutual ins. Co., 23 F.3d 1176 (7th Cir. 1994); Walbrook Ins. Co. Ltd. v. UNARCO Industries Inc., – F.Supp. 2d –, 1992 WL 159266 (N.D.Ill. 1992)[4]. See

---

[4]The only case to the contrary appears to be Schal Bovis Inc. v. Casualty Ins. Co., 732 N.E.2d 1082, 1090 (Ill.App. 1999). The validity of this case is extremely doubtful given the subsequent rulings by the State Supreme Court.

also, Cramer, 675 N.E.2d at 904 (declining to extend duty to settle to first party claims made directly by insured against insurer which do not involve liability insurance).

As the Cramer Court noted, the "good faith and fair dealing" principle in contract law is used only as a construction aid in determining the intent of contracting parties; the purpose of this principle is to prevent one party from doing anything that would destroy the other party's right to receive the benefit of the contract. 675 N.E.2d at 903. It gives rise to no contractual remedy, except in the narrow circumstance discussed above. Were the good faith principle extended in the manner proposed by IHP, the benefit of the bargain between the contracting parties would be destroyed, by inferring Coverage A for IHP despite the fact that the written insurance contract itself states that there is no Coverage A and despite the fact that IHP did not pay for such coverage.

If IHP had wanted liability coverage for itself, nothing precluded it from purchasing such coverage. In fact, IHP apparently had coverage, just not under the PIC Policy. The nature and extent of contractual obligations under the insurance contract between PIC and IHP extends only so far as is supported by consideration. Under the facts of this case, it would be wholly improper for this Court to expand the contractual obligation actually supported by consideration on IHP's part to encompass benefits that could have been but were not included in the contract.

Finally, even assuming *arguendo* that Illinois would recognize some concept of duty to settle that might benefit someone other than an insured, that would not help IHP here, where the contract between PIC and IHP clearly states that there is no liability coverage for IHP. A duty may be modified contractually; if there was a duty to settle in this case, that duty was excluded by the terms of the insurance contract between PIC and IHP. Duty is

11

a legal concept, not a subject for imagination. If duty were so freely expanded as IHP would have, anyone could sue anyone else in tort if there was some contractual relationship. Eventually, there would be no principled basis for a distinction between tort and contract law and no bounds to the tort-law concept of duty. I therefore find that no duty to settle running in favor of IHP can be inferred under the facts of this case. There being no duty, IHP's tort claim against PIC fails as a matter of law. The motion for judgment on the pleadings as to that claim is therefore allowed. Count I is dismissed with prejudice.

The same is not true with respect to Dr. Mullins' claim against PIC. Clearly a duty to settle existed under the law discussed above. But defendant argues that Dr. Mullin incurred no damages because the entire amount of the judgment and interest was paid by IHP and PIC.

Defendant is correct that, as a general rule, to constitute a valid cause of action in tort, there must be both injury and damages. Where a complaint fails to allege any damage to the plaintiff that resulted from the alleged wrongful acts of the defendant the action does not set forth recoverable damages and must be dismissed. <u>Reuben H. Donnelley Corp. v. Brauer</u>, 655 N.E.2d 1162, 1173-1173 (Ill.App.1995). But actual damages are not limited to pecuniary loss; harm to reputation and emotional injuries and other consequential damages are also properly recoverable as a general rule.

Dr. Mullins' claim seeks damages for injury to reputation and for emotional distress, so even assuming for the sake of argument that Dr. Mullin could prove no pecuniary loss, he has alleged injury and compensable damages. Defendant has cited no authority for the proposition that such damages may not be recovered in a duty to settle tort case. I cannot

conclude as a matter of law that Dr. Mullins suffered no compensable injuries. Accordingly, the motion for judgment on the pleadings as to Count II is denied.

### CONCLUSION

As stated above, the Motion to Dismiss Count III (#19) is GRANTED, and that claim is dismissed without prejudice. The Motion for Judgment on the Pleadings (#16) is GRANTED IN PART AND DENIED IN PART. Defendant is directed to file an answer to Count II within 14 days of this date.

ENTER this 6th day of August, 2007.

s/ John A. Gorman

JOHN A. GORMAN
UNITED STATES MAGISTRATE JUDGE